```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

UNITED STATES OF AMERICA,

       Plaintiff,
v.                                  Case No. 8:10-cv-2331-T-33TBM

GE HFS HOLDINGS, INC., f/k/a
Heller Healthcare Finance, Inc.,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant GE HFS HOLDINGS, INC., f/k/a Heller Healthcare Finance, Inc.'s Motion for Partial Summary Judgment (Doc. # 16), which was filed on June 9, 2011. The Government filed a Response in Opposition to Heller's Motion on June 23, 2011. (Doc. # 17). For the reasons that follow, the Court grants the Motion for Partial Summary Judgment.

**I. Background**

The Government seeks to impose liability on Heller, pursuant to 26 U.S.C. § 3505(b), for unpaid employment taxes of two employers to whom Heller lent funds: (1) Whole Person Home Health Care of Ohio, Inc. and (2) Silver Moves, Inc.[1]

---

[1] Section 3505(b) of the Internal Revenue Code permits the IRS to impose liability on a third party-such as a lender-that supplies funds to an employer for the specific purpose of paying wages with actual knowledge that the employer does not intend to or will not be able to pay the employment taxes on

The unpaid employment taxes amount to $146,729.69, plus interest.  The following table illustrates the amounts in question:

| Taxpayer/Period | Amount | Assessment Date |
| --- | --- | --- |
| ***Whole Person Q2 1999*** | ***$45,750.33*** | ***October 18, 1999*** |
| ***Whole Person Q3 1999*** | ***$45,906.19*** | ***February 14, 2000*** |
| ***Whole Person Q1 2000*** | ***$26,184.27*** | ***September 11, 2000*** |
| Whole Person Q3 2000 | $15,239.64 | December 18, 2000 |
| ***Silver Moves Q1 2000*** | ***$9,262.42*** | ***July 3, 2000*** |
| Silver Moves Q3 2000 | $4,386.84 | January 1, 2001 |

With respect to $127,103.21 of the $146,729.69 sought in the complaint (shown in bold and italics), Heller submits that the Government's suit is barred by Treasury Regulation § 31.3505-1(d)(1)'s ten-year statute of limitations: "In the event the lender . . . does not satisfy the liability imposed by section 3505, the United States may collect the liability by appropriate civil proceeding commenced within 10 years after assessment of the tax against the employer."  The ten-year statute of limitations set forth in the Treasury Regulation may be tolled, pursuant to Treasury Regulation § 31.3505-1(d)(3), by the execution of a written agreement

---

such wages. However, the liability of the third party is limited to an amount equal to 25 percent of the amount supplied by the third party.

between the parties before the expiration of the ten-year period.

The Government agrees that its complaint (Doc. # 1) was not brought within the ten-year period fixed by Treasury Regulation § 31.3505-1(d)(1). In addition, the Government agrees that it did not enter into a written stipulation with Heller to extend the time for filing suit. Nevertheless, the Government contends that this action is timely pursuant to 26 U.S.C. § 6503(h)(2). That section of the Internal Revenue Code, pertaining to limitations on assessment and collection of taxes, contains a bankruptcy tolling provision.[2]

The relevant facts are not in dispute. The Court is called upon to address the single issue of whether the bankruptcy of Whole Person and Silver Moves (the employers) tolled the statute of limitations for collecting unpaid employment taxes against Heller (the lender) under § 3505(b). As discussed below, the Court determines that the bankruptcy did not toll the statute of limitations for collecting against Heller.

---

[2] As will be discussed below, NuMed Home Health Care, Inc., Whole Person, and Silver Moves filed for bankruptcy protection on November 1, 2000. (Doc. # 15 at ¶ 3).

3

**II.  Procedural History**

In August 1997, Heller entered into a Loan and Security Agreement with NuMed Home Health Care, Inc. and six of its subsidiaries (including Whole Person and Silver Moves, Inc.). (Doc. # 15 at ¶ 3).  Under that agreement, Heller lent funds to Whole Person and Silver Moves, Inc. Id.  On November 1, 2000, NuMed, Whole Person, and Silver Moves filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Middle District of Florida. Id. at ¶ 4.  In February 2001, as part of the bankruptcy, the Government filed an adversary proceeding against Heller to determine the priority, validity, or extent of liens that Heller and the Government asserted in NuMed's accounts receivable. Id. at ¶ 5.

In June 2001, the Government amended its adversary proceeding complaint to make claims (in count two) against Heller under § 3505(b) of the Internal Revenue Code.  That amended complaint encompassed the unpaid taxes that are at issue in the present action. Id. at ¶ 6.  The parties conducted discovery regarding the Government's § 3505(b) claim during the pendency of the bankruptcy case. Id. at ¶ 7. On August 16, 2001, the bankruptcy court confirmed NuMed's joint plan of reorganization (which also covered Whole Person and

4

Silver Moves). <u>Id.</u> at ¶ 8.

The confirmation of the joint plan of reorganization did not end the litigation. In December 2001, the Government moved to dismiss its § 3505(b) count, arguing that the bankruptcy court lacked subject matter jurisdiction over its § 3505(b) claims. <u>Id.</u> at ¶ 9. In March 2002, the bankruptcy court issued a published decision granting the Government's motion to dismiss its § 3505(b) claims because the Court lacked jurisdiction to determine the tax liabilities of entities that are not bankruptcy debtors. <u>United States v. Heller Health Care Finance</u>, 48 Collier Bankr. Cas. 2d (MB) 335; 2002 Bankr. LEXIS 532 (M.D. Fla. Bankr. March 13, 2002).[3]

On October 18, 2010, the Government filed the present action (Doc. # 1) seeking payment of $146,729.69, plus interest, in accordance with § 3505(b) of the Internal Revenue Code. on January 27, 2011, Heller filed its answer and asserted the following affirmative defense:

> Plaintiff's action is not timely under Treas. Reg. § 31.3505-1(d)(1) with respect to some of the trust fund taxes described in paragraph 6 of the Complaint. Specifically, Plaintiff's action is not timely with respect to the June 1999, September 1999, and March 2000 trust fund taxes for Whole

---

[3] Heller requested that the dismissal of the Government's § 3505(b) claims be with prejudice; however, the bankruptcy court declined to dismiss such claims with prejudice.

5

>      Person Home Health Care of Ohio, Inc. and with
>      respect to the March 2000 trust fund taxes for
>      Silver Moves, Inc.

(Doc. # 10 at 3).

On June 9, 2011, Heller filed its Motion for Partial Summary Judgment expounding upon the statute of limitations defense asserted in its answer. The Motion for Partial Summary Judgment is ripe for the Court's review.

### III. **Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all

6

reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id.

**IV.   Analysis**

    **A.   Summary of the Arguments**

Treasury Regulation § 31.3505-1(d) provides that the IRS must bring any action against a third-party lender under § 3505(b) of the Internal Revenue Code within ten years of the date on which the IRS assesses the underlying employer for the unpaid withholding taxes. The parties may extend the ten-year statute of limitations by executing a written agreement before the ten-year period expires pursuant to Treasury Regulation § 31.3505-1(d)(3). The Treasury Regulation does not contain a provision extending the statute of limitations during bankruptcy proceedings. Heller seeks an order determining that $127,103.21 of the $146,729.69 sought in the complaint is

7

time-barred.

On the other hand, the Government points to 26 U.S.C. § 6502, "Collection After Assessment," which is the general statute of limitations applicable to the Government's collection of unpaid taxes. Like Treasury Regulation § 31.3505-1(d), § 6502 of the Internal Revenue Code imposes a ten-year statute of limitations. However, key to the Government in this case, § 6502 is subject to a provision tolling the statute of limitations during relevant bankruptcy proceedings. Specifically, pursuant to 26 U.S.C. § 6503(h)(2):

> [T]he running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and . . . for collection, 6 months thereafter.

Heller and the Government agree that NuMed, Whole Person, and Silver Moves filed bankruptcy petitions in the Middle District of Florida on November 1, 2000. On August 16, 2001, the bankruptcy court confirmed a joint plan of reorganization, which covered NuMed, Whole Person, and Silver Moves.

Under Heller's interpretation of the law, the aforementioned bankruptcy case has no impact on the

8

Government's current action to collect taxes from Heller, and, the earliest four of the six tax assessments in question are barred by the running of the statute of limitations. The Government's position is that the aforementioned bankruptcy extended the statute of limitations such that no portion of the amount sought in the complaint is time-barred.

**B.   Case Law Discussion**

The case of United States v. Associates Commercial Corp., 721 F.2d 1094 (7th Cir. 1983), serves as the Court's starting point. There, the Government made tax assessments against Dot Engravers, Inc. for unpaid employment taxes. Id. at 1096. Dot filed for protection under Chapter 11 of the United States Bankruptcy Code, which tolled the statute of limitations for collecting employment taxes from Dot. Id. Thereafter, the Government sued Associates (a lender), alleging that Associates was liable for Dot's employment taxes under § 3505 of the Internal Revenue Code. Id. at 1095.

The Government filed suit against Associates more than six years after the earliest tax assessment was made against Dot.[4] The statute of limitations for collecting against Dot

---

[4] At the time the Government sued Associates, the statute of limitations contained in § 6502 of the Internal Revenue Code was six years. As discussed herein, the statute of limitations has been extended to ten years.

had not expired because Dot was in bankruptcy. However, the United States sued Associates, not Dot, and Associates moved to dismiss the § 3505 action arguing that the statute of limitations for collecting against Associates was not tolled during Dot's bankruptcy. Associates also argued that dismissal was appropriate because the Government failed to provide proper notice of the tax assessment to Associates.

The district court granted the motion to dismiss, finding that notice of Dot's tax assessments, which was not provided to Associates, was required to sue Associates. In dicta, the district court remarked that, had notice been provided, the suit would have been timely against Associates because the suit would have been timely against Dot: "[I]t would be incongruous to interpret the applicable statutes to define different periods of limitations for persons liable for the same tax." United States v. Associates Commercial Corp., 548 F. Supp. 171, 176 (N.D. Ill. 1982). The court further noted, "The statute of limitations should, if possible, be the same as to all. Accordingly, we hold that section 6503(b) tolled the running of the statute not only as to Dot but as to [Associates] as well." Id.

The Seventh Circuit affirmed as to both the notice ruling and the statute of limitations dicta. The Seventh Circuit

10

specifically rejected Associates' arguments concerning notice and also determined that the Treasury Regulations's failure to track the bankruptcy tolling provision of § 6502 was an "oversight." <u>Associates</u>, 721 F.2d at 1097. The Seventh Circuit further ruled: "Because of the marriage between a lender's liability and a taxpayer's liability, the limitations period with respect to the lender's liability should be coterminous with the limitations period applicable to the taxpayer." <u>Id.</u> at 1097.

The Third Circuit also had the occasion to consider the notice requirements detailed in <u>Associates</u> and held: "the notice required by <u>Associates Commercial Corp.</u> communicates no additional information; thus it serves no useful purpose." <u>United States v. Jersey Shore State Bank</u>, 781 F.2d 974, 982 (3d Cir. 1986). The Third Circuit further remarked that the <u>Associates</u> decision "adds an additional formalistic requirement for the imposition of section 3505 liability ... thereby thwarting Congress' intent to recover the unpaid withholding taxes from [parties liable under Section 3505]." <u>Id.</u>

The Supreme Court recognized the conflict on the notice issue between the Seventh Circuit (<u>Associates</u>) and the Third Circuit (<u>Jersey Shore</u>) and affirmed the Third Circuit's

11

holding in <u>Jersey Shore State Bank v. United States</u>, 479 U.S. 442 (1987), as follows: "This case presents the question of whether § 6303(a) requires the Government to provide notice and demand for payment to a lender before bringing a civil suit against the lender to collect sums for which it is liable under § 3505. We hold that it does not." 479 U.S. at 444.

Neither the Third Circuit nor the Supreme Court in <u>Jersey Shore</u> commented or expounded upon the statute of limitations dicta in <u>Associates</u>. However, it is apparent to this Court that <u>Jersey Shore</u> overruled the Seventh Circuit's "marriage" of the employer's and the lender's tax liability as set forth in <u>Associates</u>. This Court is not convinced by the dicta in <u>Associates</u>, an otherwise overruled case.[5] Furthermore, the premise in <u>Associates</u> that the bankruptcy tolling provision was omitted from § 3505 due to "oversight" is no longer viable. In 1995, the Treasury amended Treasury Regulation § 31.3505-(d). (Doc. # 16-2). Specifically, the Treasury extended the statute of limitations for § 3505(b) actions from six years to ten years and added a provision for extending the statute of limitations by written agreement. Had the Treasury

---

[5] The Court agrees with Heller's argument that "<u>Jersey Shore</u> represents more than a mere rejection of the notice holding in <u>Associates</u>." (Doc. # 16 at 14).

intended to further elongate the § 3505(b) limitations period with bankruptcy tolling, it could have done so. The fact that it did not do so speaks volumes.

In addition to presenting the defunct "oversight" argument espoused in <u>Associates</u>, the Government urges the Court to apply the bankruptcy tolling provision on the basis of <u>United States v. Galletti</u>, 541 U.S. 114 (2004). In that case, the Court held:

> Once a tax has been properly assessed, nothing in the Code requires the IRS to duplicate its efforts by separately assessing the same tax against individuals or entities who are not the actual tax payers but are, by reason of state law, liable for payment of the taxpayer's debt. The consequences of the assessment – in this case the extension of the statute of limitations for collection of the debt–attach to the tax debt without reference to the special circumstances of the secondarily liable parties.

541 U.S. at 123. Thus, <u>Galletti</u> stands for the proposition that "the statute of limitations attache[s] to the debt as a whole" and is the same regardless of whether the IRS seeks to collect from the taxpayer or from those derivatively liable. <u>Id.</u>[6]

---

[6] <u>Galletti</u> instructs that:

> Under a proper understanding of the function and nature of an assessment, it is clear that it is *the tax* that is assessed, not the taxpayer. . . . And in <u>United States v. Updike</u>, 281 U.S. 489 (1930),

13

The holding in Galletti, a partnership case, is not implicated in this case. The liability of a partner for partnership taxes is different from a lender's liability under § 3505 of the Internal Revenue Code.[7] As explained in Jersey Shore, "Section 3505 does not declare that a lender is 'liable for the unpaid tax.' Instead, the section imposes liability on the lender for all or part of 'a sum equal to the taxes.'" 479 U.S. at 446 (citing § 3505(a), (b)).

Under § 3505, a lender can be liable for taxes and interest, but not penalties, for up to 25 percent of amounts advanced to the employer. In addition, the manner in which the IRS collects each liability differs. Employers are

---

    the Court . . . held that the limitations period resulting from a proper assessment governs "the extent of time for the enforcement of the tax liability" Id. at 495. In other words, the Court held that the statute of limitations attached to the debt as a whole. The basis of the liability in Updike was a tax imposed on the corporation, and the Court held that the same limitations period applied in a suit to collect the tax from a corporation as in a suit to collect the tax from a derivatively liable transferee. See also United States v. Wright, 57 F.3d 561, 563 (7th Cir. 1995)(holding that, based upon Updike's principle of "all-for-one, one-for-all," the statute of limitations governs the debt as a whole).

Galletti, 541 U.S. at 123.

[7] The Galletti case did not mention § 3505.

14

subject to the Government's summary collection procedures soon after unpaid employment taxes are assessed. Jersey Shore, 479 U.S. at 447. In contrast, the Government may forcibly collect against a lender only by filing a civil suit as it did in this case. Id.

Thus, there is not necessarily an absolute identity between the employer's tax liability and the lender's liability under § 3505. Because the liability of a lender may be different from the tax liability of an employer who fails to pay employment taxes, the Court determines that Galletti's "all-for-one, one-for-all" rationale does not apply. The marriage of the employer's and the lender's liability was dissolved in Jersey Shore, a case specifically involving § 3505. This Court declines the Government's invitation to rule in contravention of Jersey Shore.

United States v. Harvis Construction Co., 857 F.2d 1360 (9th Cir. 1988), also supports this Court's statute of limitations decision. There, the same issue presented in this case was presented to the Ninth Circuit, and that court rejected the Government's arguments: "The language of [Treasury Regulation 31.3505-1(d)(1)] is plain and clear and not inconsistent with the revenue statutes. The regulation does not contain a provision for [bankruptcy] suspensions, and

15

we will not create a suspension on the basis that the I.R.S. inadvertently failed to include it." 857 F.2d at 1364. The court further explained, "The proper function of a court is to construe and apply statutes, not write them."[8]

As in Harvis, this Court finds that the Treasury Regulation governing lender liability for unpaid employment taxes is unambiguous, as is its single provision for tolling of the statute of limitations (by written agreement). There can be no argument that the present case falls outside of the ambit of the applicable Treasury Regulation. In this case, the Government missed the ten-year period for filing suit, and it did not approach Heller regarding an extension of time. This is not a case in which the Government was unaware of Heller's liability until after expiration of the statute of limitation. To the contrary, the Government identified Heller's potential liability over a decade ago, and the Government elected to dismiss its own action against Heller in 2001. The Government has presented the Court with no

---

[8] Notably absent from § 3505(b) of the Internal Revenue Code and Treasury Regulation § 31.3505-1 is any reference to bankruptcy tolling. Rather than operating under the assumption that this "omission" was inadvertent, the Court presumes that the Code and Regulations were carefully drafted, that the provisions included were intentionally selected, and that items not included were intentionally omitted.

16

extenuating circumstance warranting an expansion of the already generous ten-year statute of limitation. In addition, it should be noted that the Government was in no way prohibited from collecting against Heller during the pendency of NuMed, Silver Moves, and Whole Person's bankruptcy case.

In conclusion, the Court has considered the authorities and the parties' submissions and determines that it is appropriate to grant the Motion for Partial Summary Judgment. The Court finds that the Government's action against Heller, with respect to $127,103.21 of the $146,729.69 sought in the complaint, is time-barred.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant GE HFS HOLDINGS, INC., f/k/a Heller Healthcare Finance, Inc.'s Motion for Partial Summary Judgment (Doc. # 16) is **GRANTED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 14th day of November, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel and Parties of Record